IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br>                    Plaintiff, <br><br> v. <br><br> **STEPHENIE STITES (01)**, <br><br>                    Defendant. | Case No. 22-20020-01-DDC |

**MEMORANDUM AND ORDER**

Defendant Stephenie Stites has filed a Motion to Reduce Sentence under Amendment 821 to § 4C1.1 of the United States Sentencing Guidelines. Doc. 68. The government opposes Ms. Stites's motion. Doc. 70. Because the court lacks jurisdiction over Ms. Stites's motion, it dismisses that motion for the following reasons.

**I.    Background**

On June 6, 2022, Ms. Stites entered a guilty plea (Doc. 10) to bank fraud, violating 18 U.S.C. § 1344. On December 20, 2022, a federal probation officer prepared an Amended Presentence Investigation Report (PSR). Doc. 23. Based on Guidelines § 2B1.1(a)(1), the PSR determined that Ms. Stites had a base offense level of seven. *Id.* at 7 (PSR ¶ 30). The PSR added 14 points under Guidelines § 2B1.1(b)(1)(H) because the loss exceeded $550,000 but didn't exceed $1,500,000. *Id.* at 8 (PSR ¶ 31). A two-point addition applied under Guidelines § 3B1.3 because Ms. Stites abused her position as accounts manager—a position with sole access to the accounts—to commit and conceal the offense for two years. *Id.* (PSR ¶ 33). The PSR deducted three points because Ms. Stites accepted responsibility and timely notified authorities

of her intent to enter a plea. *Id.* (PSR ¶¶ 37–38). Based on the 2021 Guidelines Manual, Ms. Stites had a total offense level of 20. *Id.* (PSR ¶ 39).

Ms. Stites's criminal history produced zero criminal history points, establishing a criminal history category of I. *Id.* at 11 (PSR ¶ 55). "Based upon a total offense level of 20 and a criminal history category of I, the guideline imprisonment range [was] 33 months to 41 months." *Id.* at 17 (PSR ¶ 84). The parties' binding plea agreement recommended a sentence at the low end of the applicable Guideline range. Doc. 10 at 4–5 (Plea Agreement). On January 19, 2023, the court sentenced Ms. Stites to imprisonment for 33 months, four years of supervised release, $100 assessment, and $712,890.27 restitution. Doc. 26 at 2–3, 6.

Ms. Stites asserts that Amendment 821 to § 4C1.1 of the United States Sentencing Guidelines applies to her January 2023 sentence and reduces her offense level by two levels. Doc. 68. The court addresses Ms. Stites's motion, but first, recites the governing legal standard.

## II.     Legal Standard

"Unless the basis for resentencing falls within one of the specific categories authorized by section 3582(c), the district court lack[s] jurisdiction to consider [defendant's] request." *United States v. Smartt*, 129 F.3d 539, 541 (10th Cir. 1997). Section 3582(c) of Title 18 of the United States Code grants the court the authority to modify a sentence in just three scenarios:

> (1) on motion of the Director of the Bureau of Prisons or the defendant, if defendant exhausts all administrative remedies, if special circumstances exist;
>
> (2) if otherwise expressly permitted by statute or Federal Rule of Criminal Procedure 35; or
>
> (3) if the sentencing range is subsequently lowered by the Sentencing Commission.

*United States v. Sharkey*, 543 F.3d 1236, 1239 (10th Cir. 2008).  Ms. Stites asks the court to modify her sentence based on the third circumstance—a subsequent change in the sentencing range.  Doc. 68.

Effective November 1, 2023, Amendment 821 Part B lowered the offense level by two levels for certain defendants with zero criminal history points.  U.S. Sent'g Guidelines Manual § 4C1.1 (U.S. Sent'g Comm'n 2023).  The amendment applies to a defendant who "meets all of the . . . criteria" in subsections (a)(1) through (a)(10):

(1) the defendant did not receive any criminal history points from Chapter Four, Part A;

(2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);

(3) the defendant did not use violence or credible threats of violence in connection with the offense;

(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and

(10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;

*Id.*

**III.     Analysis**

Ms. Stites is a zero-point offender. *See* Doc. 23 at 11 (PSR ¶ 55). But she loses her bid for a reduced sentence at subsection (a)(6), which requires that "the defendant did not personally cause substantial financial hardship[.]" U.S. Sent'g Guidelines Manual § 4C1.1(a)(6) (U.S. Sent'g Comm'n 2023). Ms. Stites was convicted of bank fraud for embezzling $712,890.27 from her employer, Norbrook, Inc. Doc. 23 at 6 (PSR ¶ 24). Here, the factual basis for Ms. Stites's plea makes clear that Ms. Stites, in fact, did cause substantial hardship to her victim. An FBI investigation revealed that from 2018 to 2020, Ms. Stites "used company credit cards for personal use, totaling $184,519.07, and misappropriated company funds using two personal companies created by Stites totaling $528,371.20." *Id.* In a victim impact statement, Norbrook recounted how Ms. Stites's actions affected its business:

> There have been many changes at Norbook since the embezzlement occurred:
>
> Two full time positions were moved from the U.S. to the corporate headquarters in Newry, Northern Ireland.
>
> Two additional employees have since left the company as a direct result of the scrutiny that was placed on them following the embezzlement.
>
> The changes in processes and procedures regarding payment of vendors and use of company credit card are burdensome.
>
> [Ms. Stites] mis[]represented herself to the Norbrook team of employees as someone who cared for the company and the community. In the end her actions have created a culture of suspicion with no capacity for trust.
>
> The money that was stolen had a significant impact on the financial performance for the time but the additional policy costs and productivity burdens remain on going.

*Id.* at 6–7 (PSR ¶ 26).

Ms. Stites contends she didn't cause substantial financial hardship because she didn't receive a substantial financial hardship enhancement under Guidelines § 2B1.1(b)(2)(A)(iii). Doc. 68 at 4.  The court rejects Ms. Stites's argument that the court can't find substantial financial hardship absent an enhancement under § 2B1.1(b)(2)(A)(iii).[1]  Indeed, Application Note 1 to § 4C1.1 provides "[t]he application of subsection (a)(6) is to be determined independently of the application of subsection (b)(2) of § 2B1.1[.]" U.S. Sent'g Guidelines Manual § 4C1.1 Application Note 1 (U.S. Sent'g Comm'n 2023); *see also United States v. Hanson*, No. 1:19-CR-089, 2024 WL 2781065, at *4 (D.N.D. May 30, 2024) (denying motion to reduce sentence because defendant caused significant financial hardship when defendant was zero-point offender without § 2B1.1(2)(A)(iii) enhancement because "Section 4C1.1(a)(6) does not itself limit its application to cases where the enhancement under Section 2B1.1(2)(iii) applied"); *United States v. Hise*, No. 20-CR-40072-JPG-1, 2024 WL 1741590, at *2 (S.D. Ill. Apr. 23, 2024) (denying motion to reduce sentence under § 4C1.1 where § 2B1.1(2)(A)(iii) enhancement at sentencing and explaining that "[e]ven if an enhancement for causing substantial financial hardship is not *per se* disqualifying, based on the information from the PSR, . . . the Court would *independently find* that [defendant] personally caused substantial financial hardship to [victim] so as to disqualify her from an Amendment 821 reduction" (emphasis added)). Instead, the court only must consider the non-exhaustive factors in Application Note 4(F) to § 2B1.1.  U.S. Sent'g Guidelines Manual § 4C1.1(b)(3) (U.S. Sent'g Comm'n 2023).

Application Note 4(F) provides:

> In determining whether the offense resulted in substantial financial hardship to a victim, the court shall consider, among other factors, whether the offense resulted in the victim
>
> (i) becoming insolvent;

---

[1] The government concedes this point.  The court, in its discretion, rejects Ms. Stites's argument.

>   (ii) filing for bankruptcy under the Bankruptcy Code (title 11, United States Code);
>
>   (iii) suffering substantial loss of a retirement, education, or other savings or investment fund;
>
>   (iv) making substantial changes to his or her employment, such as postponing his or her retirement plans;
>
>   (v) making substantial changes to his or her living arrangements, such as relocating to a less expensive home; and
>
>   (vi) suffering substantial harm to his or her ability to obtain credit.

U.S. Sent'g Guidelines Manual § 2B1.1 Application Note 4(F) (U.S. Sent'g Comm'n 2023). These factors, by their explicit terms, don't limit the court from considering other pertinent considerations. This discretion to broaden the inquiry is important here because some of the factors don't align perfectly with the victim here—an organization. To say it another way, factors (iii), (iv), and (v) apply more readily to a victim who is an individual. Though the victim here is an organization, Norbrook's victim impact statement provides significant information to establish that defendant's offense imposed substantial financial hardship on it. Ms. Stites's embezzlement required Norbrook to relocate employees and, indirectly, caused other employees to resign. *See* Doc. 23 at 6–7 (PSR ¶ 26). Norbrook doesn't claim it had to file for bankruptcy or cease operations, but it does assert that Ms. Stites's actions "had a significant impact on the [company's] financial performance," those actions continue to require "additional policy costs," and they burden the company's productivity. *Id.* She did, after all, steal over $712,000 of the company's money. Norbrook's losses qualify as the kind of substantial harm contemplated in Application Note 4(F).

In short, the new § 4C1.1 in the Sentencing Guidelines doesn't apply to Ms. Stites. Because Ms. Stites's sentencing range remains unchanged, her request doesn't fall under 18 U.S.C. § 3582(c)(2).

The court is mindful, however, that the government hasn't opposed the eligibility question. *See* Doc. 70 at 3. So, the court, out of caution, also provides a second (and independent) reason warranting its ruling. This reason addresses what would happen if Ms. Stites qualified as eligible for a reduced sentence under § 3582(a) and Amendment 821.

If Ms. Stites qualified for a reduced sentence under Guidelines § 4C1.1, the court still would deny her motion because the § 3553(a) factors don't favor a reduced sentence. Before granting or denying a sentence reduction based on a retroactive Guideline amendment, the court must engage in a two-step process. *United States v. Madrid*, No. 18-2325-WJ, 2024 WL 2763764, at *2 (D.N.M. May 30, 2024). The court just completed step one, determining that Ms. Stites doesn't qualify for a reduced sentence under the retroactively modified guidelines. At step two "'§ 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case.'" *Id.* (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)). The court evaluates those factors, next.

Those factors include: (1) defendant's personal history and characteristics; (2) her sentence relative to the nature and seriousness of her offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a). These factors don't favor a reduced sentence.

Ms. Stites committed a serious felony offense. She stole over $712,000 from her employer and used it to fund her lifestyle—$71,891 in vehicle expenses, $43,615 spent at

7

Amazon, $40,600 cash and ATM withdrawals, $33,419 in home expenses, $26,575 in clothing, $21,144 used at retail and discount stores, $16,937 in Cash Applications, $14,933 in travel and hotels, $16,000 in Square Cash Application to daughter Ashley Stites, and $14,088 at restaurants. Doc. 23 at 4 (PSR ¶ 14).  This conduct displays a persistent and troubling indifference for the law.  And this conduct shows a willingness to pursue personal gain, no matter the cost to others.  Ms. Stites lived large, while the company took the hit.  Ms. Stites's current sentence provides just punishment, and a reduced sentence would not.

And this wasn't Ms. Stites's first tour as a thief.  Her criminal history includes a 1999 conviction for theft, a 2000 conviction for theft, and a 2000 conviction for credit card misuse.  *Id.* at 9 (PSR ¶¶ 43–45).  Ms. Stites emphasizes that the "driving purpose of the addition of § 4C1.1 to the guidelines is the extensive data that shows defendant's with zero scored criminal history points are significantly less likely to reoffended than even those offenders with just one scoreable point."  Doc. 71 at 3.  And, to be sure, the above criminal convictions were unscored.  But the court remains concerned that Ms. Stites's history suggests a substantial basis to conclude she might thieve again.  Ms. Stites emphasizes that these prior convictions were present at her original sentencing, when the court gave her a sentence at the low end of the guideline range, so the court should repeat that pattern here.  She assumes too much.  The court gave her the sentence she deserved, and she still deserves that sentence.

In sum, Ms. Stites's Motion to Reduce Sentence fails for a second, independent reason: the § 3553(a) sentencing factors don't favor a reduced sentence.

## IV. Conclusion

The court is without jurisdiction to consider Ms. Stites's current motion. Thus, the court dismisses Ms. Stites's motion for lack of jurisdiction.[2]

**IT IS THEREFORE ORDERED BY THE COURT THAT** Ms. Stites's Motion to Reduce Sentence (Doc. 68) is dismissed.

**IT IS SO ORDERED.**

**Dated this 24th day of July, 2024, at Kansas City, Kansas.**

                                                s/ Daniel D. Crabtree
                                                **Daniel D. Crabtree**
                                                **United States District Judge**

---

[2] *See United States v. Whittaker*, 777 F. App'x 938, 940 (10th Cir. 2019) (remanding for district court to dismiss motion to reduce sentence for lack of jurisdiction because defendant didn't qualify for a reduction under § 3582(c) (first citing *United States v. White*, 765 F.3d 1240, 1250 (10th Cir. 2014) ("[D]ismissal for lack of jurisdiction rather than denial on the merits is the appropriate disposition of [defendant's] § 3582(c)(2) motion."); then citing *United States v. Graham*, 704 F.3d 1275, 1279 (10th Cir. 2013) (concluding "dismissal rather than denial is the appropriate disposition" when sentence reduction is not authorized by § 3582(c)(2)))); *United States v. Andrade*, No. 18-10129, 2024 WL 1461816, at *1 (D. Kan. Apr. 4, 2024) (dismissing Amendment 821 motion to reduce sentence when defendant failed to meet all § 4C1.1 criteria).